# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LIONEL LOMAS**

**VERSUS**

**PARISH OF ASCENSION, ET AL.**

**CIVIL ACTION**

**NO.: 16-00645-BAJ-RLB**

## RULING AND ORDER

Before the Court is the **Second Motion for Summary Judgment (Doc. 13)**[1] filed by Sheriff Jeff Wiley and Deputy Seth Boudreaux of the Ascension Sheriff's Office ("Defendants"), seeking an order dismissing Lionel Lomas' ("Plaintiff") claims in their entirety. Plaintiff opposes this motion. (Doc. 14). For reasons explained fully herein, the Motion is **GRANTED IN PART** in so far as it seeks dismissal of the federal claims. The remaining state law claims are **REMANDED** to the 23rd Judicial District Court, Ascension Parish, Louisiana.

## I. BACKGROUND

The undisputed facts in the light most favorable to Plaintiff are as follows, unless otherwise noted. On August 25, 2015, Ms. Dara Holloway[2] called the Ascension Parish Sheriff's Office to report that Plaintiff, her estranged husband, had violated a domestic abuse protective order against her. (Doc. 13-4 ¶ 1-2). At 8:47 PM,

---

[1] Defendants' first Motion, (Doc. 11), failed to comply with the local rules, (Doc. 12).

[2] At various points, the parties refer to Ms. Holloway as Ms. Lomas. The Court will refer to her by her maiden name, Ms. Holloway for consistency.

1

JURY
23rd JDC - Certitifed

in response to her complaint, Deputy Seth Boudreaux was dispatched to Ms. Holloway's grandmother's home located at 40158 Germany Road in Gonzalez, Louisiana, where Ms. Holloway was located. (Docs. 13-3 at p. 7 and 13-4 at ¶¶ 1-2, 7). After arriving, Ms. Holloway told Deputy Boudreaux that she had a protective order against Plaintiff. (Doc. 13-4 ¶ 3). Deputy Boudreaux radioed the Sheriff's Office and confirmed the existence and scope of the protective order. *Id.* at ¶ 4. Ms. Holloway told Deputy Boudreaux that she obtained the protective order against Plaintiff because he had made threats to harm her in the past, including stating that he was going to kill her. *Id.* at ¶ 5.

Ms. Holloway reported that at around 6:00 PM, while at her grandmother's house, she saw Plaintiff's 2015 Chevrolet truck drive back and forth in front of the house, and at that time her car was parked in her grandmother's driveway and would have been visible to the driver of the truck. *Id.* at ¶ 9. She also reported that the truck backed into a private driveway on the opposite side of Germany Road from her grandmother's house, where it stopped for a few minutes before driving away. *Id.* She also told Deputy Boudreaux that her children had seen Plaintiff coming from school on Germany Road.[3] (Doc. 13-3 at p. 28).

Ms. Holloway provided Deputy Boudreaux with a copy of the protective order, issued by a Louisiana state court, which she had obtained against Plaintiff. (Doc. 13-4 ¶ 6). It ordered Plaintiff:

- "NOT TO abuse, harass, stalk, follow, track, monitor, or threaten" Ms. Holloway "in any manner whatsoever."

---

[3] It is not clear from the record what school Ms. Holloway was referring to in her statement.

- "NOT TO go within 100 feet" of Ms. Holloway.

- "NOT TO go within 100 yards" of Ms. Holloway's home, located at 40238 Germany Road in Gonzalez, Louisiana.

- "TO STAY AWAY from . . . Central Primary and [East Ascension High School], [in] Gonzalez, Louisiana. (Doc. 13-5 at pp. 2-3).

Ms. Holloway obtained the protective order on August 20, 2016, and it was effective through February 10, 2016. *Id.* at p. 1.

According to Deputy Boudreaux, he then tried to speak with Plaintiff at his home, but when he arrived no one was there. (Doc. 13-4 at ¶ 12). He then called Plaintiff, but no one answered the phone. (Doc. 13-4 at ¶ 12). Plaintiff disputes that Deputy Boudreaux ever attempted to contact him. (Doc. 14-1 ¶ 7).

Deputy Boudreaux then submitted an application for a warrant to arrest Plaintiff for violating the protective order. (Doc. 13-4 at ¶ 13). On August 26, 2015, a state court judge issued a warrant for Plaintiff's arrest. *Id.* On October 1, 2015, other members of the Ascension Parish Sheriff's Office arrested Plaintiff at his work. (Doc. 13-3 at pp. 15-17). He was charged with violating a protective order under La. R.S. 14:79, *Id.* at p. 17, and he was released on bail the next day, (Doc. 1. ¶ 15). On March 16, 2016, the District Attorney dismissed the charge because Plaintiff provided evidence that he was out of the country on a cruise the day that Ms. Holloway complained that she saw his truck driving back and forth in front of her grandmother's house. (Docs. 1 at ¶ 17 and 13-2 at ¶ 16).

Plaintiff then filed suit against Deputy Boudreaux, the Parish of Ascension, and Sheriff Jeffrey Wiley. (Doc. 1). Plaintiff brought claims under 42 U.S.C. § 1983

for false arrest, false imprisonment, and malicious prosecution. *Id.* at ¶ 19. Plaintiff also brought state law defamation and negligence claims. *Id.* at ¶¶ 22, 25. On November 18, 2016, the Court granted Plaintiff's motion to voluntarily dismiss the claims it brought against Parish of Ascension. (Doc. 9). On January 25, 2017, Sheriff Boudreaux and Deputy Wiley filed a Motion for Summary Judgment. (Doc. 11). Two days later, Defendants filed a Second Motion for Summary Judgment because the first Motion failed to comply with the local rules. (Doc. 13).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in

4

favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## II. DISCUSSION

### A. Capacity Issues

Plaintiff asserts § 1983 claims against Deputy Boudreaux and Sheriff Wiley. (Doc. 1 at p. 5). Plaintiff also asserts several state law claims, including defamation and negligence. (Doc. 1. at ¶¶ 22, 25). As a threshold matter, it is unclear whether Plaintiff sued the Defendants in their official or personal capacities because Plaintiff did not specify in which capacity he was suing them. Where it is unclear in which

capacity a defendant is sued, courts must look to the "course of proceedings." *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (holding defendant was sued only in his official capacity because plaintiff did not object to defendants' assertion that they were sued only in their official capacity).

Here, Deputy Boudreaux clearly stated that his motion for summary judgment should be granted based on personal capacity claims and Sheriff Wiley stated that the claims against him should be dismissed against him in his official capacity. (Doc. 13-1 at pp. 12-14). Plaintiff did not object to these characterizations. (Doc. 14). Therefore the Court finds that Plaintiff's claims against Deputy Boudreaux are in his personal capacity and against Sheriff Wiley in his official capacity.

### B. Plaintiff's § 1983 Claims Against Deputy Boudreaux

Plaintiff brought false arrest, false imprisonment, and malicious prosecution claims under § 1983 against Deputy Boudreaux. (Doc. 1 ¶ 19). Deputy Boudreaux argues that all three claims are barred by qualified immunity because he had probable cause to arrest Plaintiff. (Doc. 13-1 at p. 12). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated a clearly established statutory or constitutional right and (2) the official's actions were

objectively unreasonable in light of clearly established law at the time of the conduct in question. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit has held that even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Claims for false arrest, false imprisonment, and malicious prosecution all require a showing that law enforcement lacked probable cause to make an arrest. *See Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (false arrest); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (false imprisonment); *Izen v. Catalina*, 398 F.3d 363, 367-68 (5th Cir. 2005) (malicious prosecution). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Davidson v. Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (internal citations and quotations omitted). Therefore officers are "entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest." *Id.* (citing *Crostley v. Lamar Cty.*, 717 F.3d 410, 422-23 (5th Cir. 2013)). In other words, a defendant is entitled to summary judgement if taking the facts in the light most favorable to the plaintiff there is not actual or arguable probable cause. *Id.* at 392.

7

Plaintiff presents three arguments about why Deputy Boudreaux lacked probable cause. (Doc. 14 at p. 3). First, Plaintiff argues that he did not actually violate the geographic limits of the protective order. *Id.* He contends that based on the distances between Germany Road and Ms. Holloway's grandmother's house, the driveway where she says she saw his truck, and the location of her own house, Plaintiff did not violate the geographic limitations of the protective order. (Doc. 14 at 3-4, Doc 14-1 at ¶ 2-3). The protective order requires Plaintiff to stay 100 feet away from Ms. Holloway and 100 yards from her home. *Id.*

Even viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Deputy Boudreaux had probable cause to believe that Plaintiff violated the protective order. Plaintiff does not dispute that Ms. Holloway told Deputy Boudreaux that she saw his truck drive back and forth in front of her grandmother's house while she was there. (Doc. 14-1). And the protective order commanded Plaintiff to not "harass, stalk, follow, track, monitor, or threaten" Ms. Holloway "in any manner whatsoever." (Doc. 13-5 at p.2). It is not objectively unreasonable then for an officer in Deputy Boudreaux's position to conclude that Plaintiff was harassing, stalking, or following Ms. Holloway based on her reports that a truck belonging to Plaintiff was driving back and forth in front of the house in which she was located, and that the same truck parked in a driveway on the opposite side of the road for a few minutes.

Plaintiff also argues that because Ms. Holloway only told Deputy Boudreaux that she saw Plaintiff's truck, but never told him that she saw Plaintiff himself, there

was no probable cause. (Doc. 14 at 3-4, Doc 14-1 at ¶ 2-3). The Court, however, finds that it is not objectively unreasonable for an officer to conclude that Plaintiff was driving the truck because Ms. Holloway told Deputy Boudreaux that the truck belonged to Plaintiff, (Doc. 13-4 ¶ 9), and Plaintiff does not dispute that he drives the particular model of truck that Ms. Holloway identified, (Doc. 14-1).

Next, Plaintiff argues that Deputy Boudreaux had "a further duty to investigate and failed to properly do so" because he failed to measure the distance between where Ms. Holloway reported that she saw Plaintiff's truck. (Doc. 14 at pp. 6-8). Plaintiff also asserts that Deputy Boudreaux breached a duty to try to contact Plaintiff at his work, and that he failed to interview other witnesses during the investigation. *Id.* An officer cannot "disregard facts tending to dissipate probable cause." *Evett v. DETNTFF*, 330 F.3d 681 (5th Cir. 2003). But, "an officer does not have an affirmative duty to investigate every possible defense a suspect may have[.]" *Townsend v. Tregre*, No. CV 16-716, 2016 WL 6403224, at *2 (E.D. La. Oct. 28, 2016); *Dressner v. Crowe*, No. 13-81, 2013 WL 5236658, at *3 (E.D. La. Sept. 16, 2013).

Even taking the facts in the light most favorable to Plaintiff, Deputy Boudreaux did not ignore facts that dissipated probable cause. To the contrary, he conducted a reasonable investigation under the circumstances. He interviewed Ms. Holloway, confirmed the scope and correctness of the protective order, and obtained a copy of the order. (Doc. 13-4 at ¶ 3-6). Deputy Boudreaux was not required to measure any distances because it was not objectively unreasonable for him to believe that there was probable cause that Plaintiff violated the protective order when Ms.

9

Holloway reported seeing Plaintiff's car drive back and forth in front of the road where she was staying at her grandmother's house, and then parking on a driveway across the street for a few minutes.

Finally, the independent-intermediary doctrine further bars Plaintiff's recovery. Under this doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011). It does not apply, though, if "it can be shown that the deliberations of [the] intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). Here, it is undisputed that Deputy Boudreaux filed an application for an arrest warrant for Plaintiff and that a Louisiana state court judge granted this application. (Doc. 13-2 at 11-13). There is no evidence to suggest that Deputy Boudreaux mislead or fabricated information provided to the state court judge. Therefore, the independent-intermediary doctrine further bars Plaintiff's recovery. Accordingly, Plaintiff's false arrest, false imprisonment, and malicious prosecution claims brought against Deputy Boudreaux in his personal capacity are dismissed.

### C. Plaintiff's § 1983 Claims Against Sheriff Wiley

Plaintiff also claims that Sheriff Wiley is liable under § 1983 in his official capacity for false arrest, false, imprisonment, and malicious prosecution. (Doc. 1 at ¶ 19). A § 1983 suit against a government official, like a Sheriff, in his official capacity cannot be based on a theory of vicarious liability. *Alton v. Texas A & M University*,

168 F.3d 196, 200 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). Rather, § 1983 liability for a government official sued in his official capacity requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (internal citation omitted). Further, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff[.]" *Piotrowski v. Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

For example, in *Sims v. City of New Orleans*, No. 03-CV-3169, 2005 WL 1400440, at *17 (E.D. La. June 6, 2005), where a plaintiff claimed that the police violated his constitutional rights based on an unlawful search and seizure, the court granted summary judgment in favor of the Chief of the New Orleans Police Department because the plaintiff failed to present any evidence in support of an official policy or custom. *See also Rayborn v. Bossier Par. Sch. Sys.*, 198 F. Supp. 3d 747, 757 (W.D. La. 2016) (granting summary judgment in favor of a school district where plaintiff failed to provide evidence about any policy or custom).

Plaintiff alleges that Sheriff Wiley failed to properly supervise and regulate the activities of Deputy Boudreaux and failed to enact proper policies about "the conduct, investigation and procedures of the Ascension Parish Sheriff's Office." (Doc. 1 at ¶ 25). Plaintiff, however, presented no evidence to support this claim, nor has he suggested that he will be able to present such evidence at trial. Indeed, in his opposition to Defendants' motion for summary judgment, Plaintiff seemingly

11

abandoned this claim, making absolutely no mention of any official policy or custom that led to Plaintiff's arrest. *See Savers Fed. Sav. & Loan Ass'n v. Reetz, 888 F.2d 1497*, 1501 (5th Cir. 1989) ("[E]ven a pleaded theory was waived when it was not raised in opposition to a motion for summary judgment."). Summary judgment is therefore appropriate on the § 1983 claims against Sheriff Wiley.

### D. State Law Claims

Plaintiff brought state law claims for defamation and negligence. (Doc. 1 at 5-6). In bringing these claims, Plaintiff sought to invoke the supplemental jurisdiction of the Court under 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Where all federal claims have been dismissed, there is "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). And where a court declines to exercise supplemental jurisdiction over a case that was removed to federal court, the court may remand the case. *Id.* at 351. Because the Court has determined that Plaintiff's federal law claims under § 1983 shall be dismissed, the Court declines to exercise supplemental jurisdiction over the Plaintiff's pendent state law claims and remands the remaining state claims.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Defendants' Second Motion for Summary Judgment (Doc. 13)** is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 claims against all Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that that the remaining state law claims in this action are **REMANDED** to the 23rd Judicial District Court, Ascension Parish, Louisiana.

Baton Rouge, Louisiana, this 7th day of September, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**